1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8
9

| | |
|---|---|
| RAY LEE VAUGHN, | ) 1:12-cv—01231-LJO-BAM-HC |
| | ) |
|            Petitioner, | ) ORDER VACATING FINDINGS AND |
| | ) RECOMMENDATIONS (DOC. 20) |
| | ) |
|    v. | ) FINDINGS AND RECOMMENDATIONS RE: |
| | ) RESPONDENT'S MOTION TO DISMISS |
| RALPH M. DIAZ, Warden, | ) THE PETITION (DOC. 13) |
| | ) |
|            Respondent. | ) FINDINGS AND RECOMMENDATIONS TO |
| | ) GRANT RESPONDENT'S MOTION TO |
| _____ | ) DISMISS THE PETITION (DOC. 13), |
| | DISMISS THE PETITION FOR WRIT OF |
| | HABEAS CORPUS AS UNTIMELY (DOC. |
| | 1), AND DIRECT THE ENTRY OF |
| | JUDGMENT FOR RESPONDENT |
| | |
| | FINDINGS AND RECOMMENDATIONS TO |
| | DECLINE TO ISSUE A CERTIFICATE OF |
| | APPEALABILITY |

      Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.§ 636(b)(1) and Local Rules 302 and 304.  Pending before the Court is Respondent's motion to dismiss the petition as untimely, which was filed on October 1, 2012.  Petitioner filed opposition on October 11, 2012, and Respondent filed a reply on November 16, 2012.

1

The undersigned Magistrate Judge filed findings and recommendations with respect to the motion on December 4, 2012. Thereafter, Petitioner filed objections in which he raised for the first time specific facts that Petitioner argued support equitable tolling of the statute of limitations.  The Court issued a briefing order to permit the parties to file briefs and submit additional documentation and factual material in order to permit full development of the pertinent facts.  Pursuant to the Court's order, Respondent filed a supplemental brief with documentation on March 22, 2013, and Petitioner filed a supplemental reply brief and supporting material on April 22, 2013.

I.   <u>Order Vacating the Initial Findings and Recommendations concerning Respondent's Motion to Dismiss</u>

In view of the additional facts set forth in the objections, reply, and both parties' supplemental briefs and submissions, the Court finds it necessary to vacate the previously filed findings and recommendations.  The Court will consider all matters filed by the parties in connection with the motion to dismiss and will set forth new findings and recommendations.

Accordingly, it is ORDERED that the findings and recommendations regarding Respondent's motion to dismiss that were filed on December 4, 2012, are VACATED.

II.  <u>Propriety of a Motion to Dismiss the Petition</u>

Respondent has filed a motion to dismiss the petition on the ground that Petitioner filed his petition outside of the one-year limitation period provided for by 28 U.S.C. § 2244(d)(1).

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) allows a district

2

court to dismiss a petition if it "plainly appears from the face
of the petition and any exhibits annexed to it that the
petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to
dismiss pursuant to Rule 4 instead of answers if the motion to
dismiss attacks the pleadings by claiming that the petitioner has
failed to exhaust state remedies or has violated the state's
procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418,
420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss
a petition for failure to exhaust state remedies); White v.
Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to
review a motion to dismiss for state procedural default); Hillery
v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same).
Thus, a respondent may file a motion to dismiss after the Court
orders the respondent to respond, and the Court should use Rule 4
standards to review a motion to dismiss filed before a formal
answer. See, Hillery, 533 F. Supp. at 1194 & n.12.

In this case, Respondent's motion to dismiss addresses the
untimeliness of the petition pursuant to 28 U.S.C. 2244(d)(1).
The material facts pertinent to the motion are mainly to be found
in copies of the official records of state judicial proceedings
which have been provided by the parties, and as to which there is
no factual dispute. Because Respondent has not filed a formal
answer, and because Respondent's motion to dismiss is similar in
procedural standing to a motion to dismiss for failure to exhaust
state remedies or for state procedural default, the Court will
review Respondent's motion to dismiss pursuant to its authority
under Rule 4.

III.  <u>Procedural Summary</u>

On March 26, 2008, Petitioner was convicted in the Kern County Superior Court (KCSC) of two counts of forcibly committing a lewd or lascivious act upon a child under the age of fourteen in violation of Cal. Pen. Code § 288(b) (counts one and two) and a single count of first degree burglary in violation of Cal. Pen. Code § 460 (count three).  (LD 1.)[1]  The jury further found that pursuant to Cal. Pen. Code § 667.61(a), Petitioner committed the burglary with the intent to violate Cal. Penal Code § 288(a) or 288(b)(1).  Petitioner was sentenced in 2008[2] to an indeterminate state prison term of twenty-five years to life on count one, and concurrent terms of eight and six years, respectively, on counts two and three.  The court stayed execution of sentence on counts two and three. (LD 1-2.)

On January 27, 2010, the California Court of Appeal, Fifth Appellate District (CCA) affirmed the judgment on appeal. (LD 2.)

On March 3, 2010, Petitioner sought review in the California Supreme Court (CSC), which was denied on April 14, 2010. (LD 3-4.)

---

[1] "LD" refers to documents lodged by Respondent in support of the motion to dismiss.

[2] Respondent states that Petitioner was originally convicted of these offenses and an additional count of child molestation on July 14, 1997.  The Court takes judicial notice of the docket in <u>Vaughn v. Adams,</u> case number 1:01-cv-05241-OWW-DLB, in which this Court granted Petitioner's previous habeas corpus petition for instructional error.  The Court may take judicial notice of court records.  Fed. R. Evid. 201(b); <u>United States v. Bernal-Obeso</u>, 989 F.2d 331, 333 (9th Cir. 1993); <u>Valerio v. Boise Cascade Corp.</u>, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), <u>aff'd</u>, 645 F.2d 699 (9th Cir. 1981). Petitioner was retried and convicted on March 26, 2008.  (LD 1.)  Although Petitioner indicates in the petition before the Court that he was convicted and sentenced in 1997, the Court understands from the documents submitted in connection with the motion that Petitioner is challenging his 2008 convictions.

On June 26, 2010,[3] Petitioner constructively filed a petition for writ of habeas corpus in the KCSC, which was denied on August 25, 2010.  (LD 6-7.)

The Court takes judicial notice of its docket and documents filed in Vaughn v. Allison, case number 1:11-cv-01384-GSA-HC, which show that on August 17, 2011, Petitioner filed a previous federal habeas application challenging the same convictions.  The Court found that the petition contained some unexhausted claims and dismissed the action without prejudice on February 13, 2012. (Doc. 1, 6; doc. 18.)

On April 28, 2012, Petitioner filed a petition for writ of habeas corpus in the CSC, which was denied on July 11, 2012.  (LD 8-9.)

Petitioner constructively filed the petition in this action on July 20, 2012. (Doc. 1, 6.)

IV.   The Limitation Period

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).  Because Petitioner constructively filed his petition for writ of habeas corpus here

---

[3] Under the mailbox rule, a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court." Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001); Houston v. Lack, 487 U.S. 266, 276 (1988); see, Habeas Rule 3(d).  The mailbox rule applies to federal and state petitions alike.  Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003), and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).  It has been held that the date the petition is signed may be inferred to be the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule.  Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds, Pace v. DiGuglielmo, 544 U.S. 408 (2005).

on July 20, 2012, the AEDPA applies to the petition.

The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). It further identifies the pendency of some proceedings for collateral review as a basis for tolling the running of the period. As amended, subdivision (d) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

V.   The Running of the Limitation Period

Pursuant to § 2244(d)(1)(A), the limitation period runs from the date on which the judgment became final.

Under § 2244(d)(1)(A), the "judgment" refers to the sentence imposed on the petitioner. <u>Burton v. Stewart</u>, 549 U.S.147, 156-

57 (2007).  The last sentence was imposed on Petitioner on April 28, 2008.  (LD 1.)

Under § 2244(d)(1)(A), a judgment becomes final either upon the conclusion of direct review or the expiration of the time for seeking such review in the highest court from which review could be sought.  Wixom v. Washington, 264 F.3d 894, 897 (9th Cir. 2001).  The statute commences to run pursuant to § 2244(d)(1)(A) upon either 1) the conclusion of all direct criminal appeals in the state court system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or 2) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state court system followed by the expiration of the time permitted for filing a petition for writ of certiorari.  Wixom, 264 F.3d at 897 (quoting Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998), cert. denied 525 U.S. 1187 (1999)).

Here, Petitioner's direct review concluded when his petition for review was denied by the CSC on April 14, 2010.  The time for direct review expired ninety days thereafter on July 13, 2010, when the period for seeking a writ of certiorari concluded.  See, Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999).  Thus, the limitation period began to run on July 14, 2010, and without any tolling would expire one year later on July 13, 2011.  Patterson v. Stewart, 251 F.3d 1243, 1245-46 (9th Cir. 2001) (holding analogously that the correct method for computing the running of the one-year grace period is pursuant to Fed. R. Civ. P. 6(a), in which the day upon which the triggering event occurs is not counted).

The petition was filed here on July 20, 2012.  Thus, absent any tolling, the petition shows on its face that it was filed outside the one-year limitation period provided for by the statute.

VI.  <u>Statutory Tolling pursuant to 28 U.S.C. § 2244(d)(2)</u>

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period.  28 U.S.C. § 2244(d)(2).

Once a petitioner is on notice that his habeas petition may be subject to dismissal based on the statute of limitations, he has the burden of demonstrating that the limitations period was sufficiently tolled by providing pertinent dates of filing and denial, although the state must affirmatively argue that the petitioner failed to meet his burden of alleging the tolling facts; simply noting the absence of such facts is not sufficient. <u>Smith v. Duncan</u>, 297 F.3d 809, 814-15 (9th Cir. 2002).

Here, Petitioner filed his first state petition on June 26, 2010.  Although filing a state petition normally initiates a period of statutory tolling, there is no tolling during time that elapses before the limitations period commences to run.  <u>Waldrip v. Hall</u>, 548 F.3d 729, 735 (9th Cir. 2008).  Thus, on July 14, 2010, the date the statute of limitations began to run, the statute was tolled.  The period of tolling endured for forty-three (43) days from July 14, 2010, through August 25, 2010, the date the KCSC denied the first state petition.

On August 26, 2010, the limitation period began running and,

8

1  absent any other basis for tolling, expired one year later on
2  August 25, 2011.

3      Petitioner filed his second state habeas petition on April
4  28, 2012.  However, the limitation period had previously expired.
5  Under such circumstances, the pendency of state applications has
6  no tolling effect.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th
7  Cir. 2003) (holding that filing a state collateral petition after
8  the running of the one-year limitations period of the AEDPA but
9  even before the expiration of the pertinent state period of
10 finality did not toll the running of the period under
11 § 2244(d)(2)).

12     Accordingly, based on the foregoing analysis, the petition
13 constructively filed in the present action on July 20, 2012, was
14 untimely.

15     VII.  Actual Innocence

16     Petitioner argues that he is innocent of the crimes of which
17 he was convicted.

18     In McQuiggin v. Perkins, - U.S. -, - S.Ct.-, 2013 WL
19 2300806, *3 (May 28, 2013), the Court held that a petitioner who
20 had not shown extraordinary circumstances and reasonable
21 diligence to warrant equitable tolling could nevertheless attempt
22 to qualify for an equitable exception to the statute of
23 limitations set forth in 28 U.S.C. § 2244(d) based on actual
24 innocence as a form of miscarriage of justice.  A petitioner does
25 not meet the threshold requirement of showing actual innocence as
26 an equitable exception to the statute of limitations unless he
27 persuades the district court that new evidence shows that it is
28 more likely than not that no reasonable juror would have

convicted the petitioner, that is, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Id. (citing Schlup v. Delo, 513 U.S. 298, 329 (1995)).  The timing of the petition is a factor bearing on the reliability of the evidence purporting to show actual innocence.  Id. at *4 (citing Schlup at 332).  Where a federal habeas court is faced with a claim of actual innocence as a gateway, unjustifiable delay does not absolutely bar relief, but rather is a factor in determining whether the petitioner has made the requisite showing of actual innocence.  A court may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of the evidence of actual innocence.  Id.  The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.  Id. at *12 (citing Schlup, 513 U.S. at 316).

Here, the pertinent portion of Petitioner's opposition to the motion to dismiss contains Petitioner's discussion of his innocence:

PETITIONER IS INNOCENT OF THE CRIMES CONVICTED OF, THE JURY REGARDLESS OF PETITIONER'S ALIBY (sic) WITNESS OR THE FACT THAT THE VICTIM STATED THAT I THE PETITIONER IN THIS CASE DID NOT COMMIT THIS CRIME.

(Opp., doc. 14, 1.)  In his objections, Petitioner points to the fact that he had an alibi witness at the time of the crimes, the jury was allowed to consider "past evidence" (apparently a reference to evidence of prior conduct), there was another man in the house, and there was no DNA evidence to connect Petitioner to the crime.  (Doc. 21, 4.)

10

There is no description of the facts of the offense in the petition.  Likewise, the CCA's opinion in the direct appeal, which focused on the jury instructions concerning evidence of prior acts, does not contain a comprehensive statement of the facts of the offenses; it reveals only that Petitioner was convicted of having committed lewd acts with a seven-year-old child, and that the parties stipulated at trial that Petitioner had a twenty-five-year-old daughter who would testify that on one occasion when she was seven years old, Petitioner pulled down her panties and fondled her vagina, and Petitioner had threatened to kill the child's mother if the mother called the police.  (LD 2, 2.)  The petition for review filed by Petitioner in the CSC reflects that Petitioner presented alibi evidence that he was with his girlfriend on the night of the charged molestation; the victim reported to police that she was awakened by a man wearing a dark blue jacket pulled over his face, exposing only his eyes and nose; the victim picked out of a photographic lineup a picture of Petitioner, who was a family friend with whom the victim was familiar; there were some discrepancies with respect to the victim's descriptions of how she reported the matter to her parents after the molestation; and there was no DNA or other medical or physical evidence to corroborate the victim's claim that Petitioner was the person who molested her.  (LD 3, 10-11.)

Petitioner does not submit any evidence that establishes actual innocence of the charges.  Petitioner refers to an alibi witness but gives no details.  (Objs., doc. 21, 4.)  The state court record shows that Petitioner presented at trial evidence that he was with his girlfriend on the night of the molestation

1  underlying the charges.  (LD 2, Petr.'s pet. for rev. filed on or
2  about March 3, 2010, in CSC case number S18062, at 10 [citing in
3  turn to 5 RT 591-95].)  Petitioner asserts that there was another
4  man there in the house who disappeared right under the
5  prosecutor's nose, but Petitioner provides no further
6  specification of the pertinent facts.  (Objs., doc. 21, 4.)

7       Although Petitioner refers to the victim's having said that
8  Petitioner did not commit "this crime," it is unclear to which of
9  the counts this indirect assertion refers.  (Opp., doc. 14, 1.)
10 Further, Petitioner has not submitted any evidence regarding the
11 alleged statement.  The state court record shows that the victim
12 reported the crime and identified Petitioner, a family friend
13 with whom the victim was familiar, as the perpetrator.  (LD 2,
14 Petr.'s pet. for rev. filed on or about March 3, 2010, in the CSC
15 in case number S18062, at 10.)  Petitioner's vague assertion
16 regarding a statement made by the victim does not constitute new
17 or reliable evidence that undercuts the reliability of the proof
18 of guilt.  The fact that there was no DNA evidence at the scene
19 linking Petitioner to the crime or that there were some
20 inconsistencies regarding the victim's report of the molestation
21 to her parents does not establish actual innocence.  (Id. at 10-
22 11.)  Petitioner has not met his burden of showing that it is
23 more likely than not that no reasonable juror would have
24 convicted him in light of new evidence.

25      Accordingly, Petitioner has not established actual innocence
26 that would permit consideration of his petition on the merits
27 despite the petition's untimeliness.
28 ///

1      VIII.   <u>Stay</u>

2           Petitioner appears to contend that on or about April 29,

3      2012,[4] Petitioner construed a "notice" filed in his previous

4      habeas proceeding in federal court to be a stay that would enable

5      Petitioner to proceed with the petition if Petitioner could or

6      would exhaust state court remedies and amend the petition

7      thereafter.  Petitioner appears to claim that his present

8      petition is simply an amendment of his previous petition, and

9      thus his claims relate back to properly exhausted claims.  (Doc.

10     14, 2.)

11          The Court takes judicial notice of the docket and specified

12     orders filed in this Court in <u>Vaughn v. Allison</u>, case number

13     1:11-cv-01384-GSA-HC.  In that proceeding, Petitioner filed on

14     August 17, 2011, a petition concerning the same convictions that

15     Petitioner challenges here.  (Doc. 1, 2.)  Respondent moved to

16     dismiss the petition on the ground that Petitioner had failed to

17     present one of his two claims, namely, a claim concerning the

18     ineffective assistance of counsel, to the California Supreme

19     Court, and thus Petitioner had failed to exhaust state court

20     remedies as to all of his claims.  (Doc. 15, 3.)  Petitioner

21     opposed the motion, arguing that the state appellate court did

22     not allow Petitioner the opportunity to exhaust his ineffective

23     assistance claim, and requesting that Petitioner be allowed to

24     exhaust his claim properly before the California Supreme Court.

25     (Doc. 17, 2-3.)

26

27          [4] The docket in <u>Vaughn v. Allison</u>, 1:11-cv-01384-GSA, reflects that on
       May 3, 2012, after judgment of dismissal and the filing of a notice of appeal,
28     Petitioner filed a notice that he had filed a habeas petition in the
       California Supreme Court to exhaust his mixed petition, and he requested that
       he be allowed to try to exhaust his mixed petition.  (Doc. 24 at 1.)

1    This Court concluded that the petition was a "mixed"
2  petition containing both exhausted and unexhausted claims, and
3  thus the petition was dismissed without prejudice to give
4  Petitioner an opportunity to exhaust his claim if he could do so.
5  (Doc. 18, 4-5.)   In its order dismissing the petition without
6  prejudice, this Court noted that the dismissal was not on the
7  merits of the petition, and thus Petitioner could return to
8  federal court to file a second petition; however, the Court
9  expressly warned Petitioner that if he returned to federal court
10 and filed another mixed petition, the petition might be dismissed
11 with prejudice.  (Id. at 5.)   The order of dismissal expressly
12 dismissed the petition without prejudice and directed termination
13 of the action and the entry of judgment, which was effected the
14 same day.  (Id. at 5; doc. 19.)   Petitioner filed a notice of
15 appeal.  (Doc. 20.)

16    In summary, this Court's order of dismissal and entry of
17 judgment in the first proceeding were not ambiguous; rather they
18 expressly provided that the proceeding was being terminated.  The
19 Court's notice concerning the future was clearly directing to the
20 filing of petitions in separate actions in the future.

21    IX.  Relation Back to the Previously Dismissed Petition

22    Petitioner appears to contend that he may amend his previous
23 petition even after a judgment dismissing the petition has been
24 entered and an appeal has been filed.  However, once a district
25 court has ruled on a claim and a party has filed an appeal from
26 the ruling, the party may not amend his petition, even if the
27 petitioner files a new petition before the appellate court rules.
28 Beaty v. Schriro, 554 F.3d 780, 782-783 & n.1 (9th Cir. 2009),

1  cert. den., Beaty v. Ryan, 130 S.Ct. 364 (2009).

2      Petitioner attempts to avoid the time bar by arguing that

3  his claims in the present petition relate back to claims set

4  forth in the previously dismissed petition.  Pleading amendments

5  relate back to the date of the original pleading when the claim

6  asserted in the amendment arises out of the conduct, transaction,

7  or occurrence set forth in the original pleading.  Fed. R. Civ.

8  P. 15(c)(1)(B).  A petitioner may amend a pending habeas corpus

9  petition to add a new claim after the statute of limitations has

10 run only if the new claim shares a common core of operative facts

11 with the exhausted claims in the pending petition such that the

12 new claims depend upon events that are not separate in time and

13 type from the originally raised episodes; otherwise a new claim

14 will not "relate back" to the date the original petition was

15 filed.  Mayle v. Felix, 545 U.S. 644, 657-58 (2005); King v.

16 Ryan, 564 F.3d 1133, 1142 (9th Cir. 2009).

17     Here, it is clear that this Court dismissed Petitioner's

18 previous petition; thus, no claims were pending in this Court at

19 the time Petitioner filed the present petition.  Relation back is

20 not available where the district court has dismissed the original

21 habeas petition because there is nothing to which a new petition

22 could relate back.  Raspberry v. Garcia, 448 F.3d 1150, 1154-55

23 (9th Cir. 2006) (no relation back where the original petition was

24 dismissed without prejudice for failure to exhaust state court

25 remedies).  Thus, Petitioner's present petition does not relate

26 back to his previous petition.

27     X.  Equitable Tolling

28     Petitioner argues that the KCSC did not send to Petitioner

1  until October 3, 2011, notice of the decision of the KCSC's

2  ruling on the habeas corpus petition that Petitioner filed in

3  June 2010.   Petitioner argues that this failure, in combination

4  with Petitioner's diligence in inquiring about the ruling,

5  entitles Petitioner to equitable tolling of the statute.   (Objs.,

6  doc. 21, 2.)   Petitioner also contends that dismissal of his

7  petition would be a miscarriage of justice.   (Id.)

8       Petitioner further contends that in an attempt to exhaust

9  claims in order to return to this Court, he sent a petition to

10  the CCA on or about August 8, 2011, which that court erroneously

11  forwarded to this Court.   (Id. at 3 & ex. D.)   Petitioner asserts

12  that when consent forms were sent out, the research to which

13  Petitioner had access did not prepare him for this "new

14  procedure," and he seeks equitable tolling because the CCA was

15  directly responsible for the petition's going to the district

16  court first.   Petitioner relies on Exhibit E, which the Court

17  notes appears to have been omitted from Petitioner's objections,

18  and asserts that the dismissal of his first federal petition on

19  February 13, 2012, left Petitioner with the impression that he

20  could exhaust the petition without filing a second petition and

21  merely by contacting this Court concerning his plans to exhaust.

22  (Id. at 3.)   He also mentions the petition filed in the CSC on

23  May 2, 2012, to exhaust his state court remedies, which was

24  denied on July 11, 2012, and a motion to resubmit that was

25  disregarded on August 1, 2012.   (Id.)   Petitioner asserts that he

26  intended merely to exhaust the old petition, not to file another

27  one.   (Id. at 3-4.)

28  ///

1            A.   <u>Legal Standards</u>

2         The one-year limitation period of § 2244 is subject to

3    equitable tolling where the petitioner shows that he or she has

4    been diligent, and extraordinary circumstances have prevented the

5    petitioner from filing a timely petition.  <u>Holland v. Florida</u>, –

6    U.S. –, 130 S.Ct. 2549, 2560, 2562 (2010).  Petitioner bears the

7    burden of showing the requisite extraordinary circumstances and

8    diligence.  <u>Chaffer v. Prosper</u>, 592 F.3d 1046, 1048 (9th Cir.

9    2010).  A petitioner must provide specific facts regarding what

10   was done to pursue the petitioner's claims to demonstrate that

11   equitable tolling is warranted.  <u>Roy v. Lampert</u>, 465 F.3d 964,

12   973 (9th Cir. 2006).  Conclusional allegations are generally

13   inadequate.  <u>Williams v. Dexter</u>, 649 F.Supp.2d 1055, 1061-62

14   (C.D.Cal. 2009).  The petitioner must show that the extraordinary

15   circumstances were the cause of his untimeliness and that the

16   extraordinary circumstances made it impossible to file a petition

17   on time.  <u>Ramirez v. Yates</u>, 571 F.3d 993, 997 (9th Cir. 2009).

18   Where a prisoner fails to show any causal connection between the

19   grounds upon which he asserts a right to equitable tolling and

20   his inability to timely file a federal habeas application, the

21   equitable tolling claim will be denied.  <u>Gaston v. Palmer</u>, 417

22   F.3d 1030, 1034-35 (9th Cir. 2005).  A prisoner's or counsel's

23   failure to recognize that a state filing was unreasonably delayed

24   under California law is not the result of an "external force"

25   that rendered timeliness impossible, but rather is attributable

26   to the petitioner as the result of his own actions.  <u>Velasquez v.</u>

27   <u>Kirkland</u>, 639 F.3d 964, 969 (9th Cir. 2011).

28        The diligence required for equitable tolling is reasonable

17

1  diligence, not "maximum feasible diligence." Holland v. Florida,

2  130 S.Ct. at 2565. However, "the threshold necessary to trigger

3  equitable tolling [under AEDPA] is very high, lest the exceptions

4  swallow the rule." Spitsyn v. Moore, 345 F.3d 796, 799 (quoting

5  Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).   A

6  petitioner seeking equitable tolling must demonstrate reasonable

7  diligence while exhausting state court remedies as well as while

8  attempting to file a federal petition during the period after the

9  extraordinary circumstances began.   Roy v. Lampert, 465 F.3d at

10 971.   The effort required is what a reasonable person might be

11 expected to deliver under his or her particular circumstances.

12 Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir. 2011).   Because a pro

13 se petitioner's habeas filings must be construed with deference,

14 a court will construe liberally such a petitioner's allegations

15 regarding diligence.   Roy v. Lampert, 465 F.3d at 970.

16     A prisoner's lack of knowledge that the state courts have

17 reached a final resolution of his case can provide grounds for

18 equitable tolling if the prisoner has acted diligently in the

19 matter.   Ramirez v. Yates, 571 F.3d at 997.   To determine whether

20 equitable tolling is appropriate, it must be determined on what

21 date the petitioner received notice, whether the petitioner acted

22 diligently to receive notice, and whether the alleged delay of

23 notice caused the untimeliness of the filing and made a timely

24 filing impossible.   Id. at 998.

25     It has been held that a delay in receipt of notification of

26 a ruling may serve equitably to toll the running of the statute.

27 See, White v. Ollison, 530 F.Supp.2d 1077, 1083-84 (C.D.Cal.

28 2007) (finding the statute equitably tolled for approximately two

and one-half months between the superior court's denial of the petitioner's habeas petition and the date on which the petitioner received notice of the court's denial, and collecting authorities); Lewis v. Mitchell, 173 F.Supp.2d 1057, 1061-62 (C.D.Cal. 2001) (finding the statute equitably tolled for the period following a court's ruling and the petitioner's receipt of notice of it, where the petitioner had not been notified of the state supreme court's denial of her habeas petition for more than five months after the denial because the prison returned the mailed notification of the denial to the state supreme court due to the omission of the prisoner's prisoner number from the address on the envelope, despite the petitioner's having provided her prisoner number to the court); and see, Lopez v. Scribner, 2008 WL 2441362, *7-*9 (No. CV 07-6954-ODW (JTL), C.D.Cal. Apr. 11, 2008) (assuming that the statute was equitably tolled during the time between a court's denial of a first state habeas petition and the date the petitioner learned of the denial, where the petitioner did not receive notice of the court's September 2006 denial of a petition filed in August 2006 until the petitioner sought a ruling in February 2007, and the delay made it impossible for the petitioner to file a timely federal habeas petition).

B. Notification of the KCSC's Ruling

1. Background

The KCSC denied the petition in case number HC 11897A, concluding that 1) Petitioner could not raise his jury instruction error claim because the appellate court had adversely ruled against Petitioner; and 2) Petitioner's claim that he

received the ineffective assistance of counsel for counsel's
failure to challenge a juror who was a friend of the county
sheriff failed because Petitioner had not provided a transcript
of a conference showing that the juror would be predisposed to
unfairness based on friendship with the sheriff, and Petitioner
had failed to show prejudice as a result of counsel's omission.
(LD 7, 1-2.)  The KCSC's order denying Petitioner's petition for
writ of habeas corpus in case number HC 11897A was dated August
25, 2010, and a minute order of the same date entered on August
30, 2010, indicates that a copy of the minute order was sent to
Petitioner on the date the petition was denied.  (LD 7.)
However, the incoming mail log from Petitioner's institution of
confinement does not reflect any incoming mail from the KCSC in
August or September 2010.[5]

Petitioner's correspondence with the KCSC resumed in June
2011.  A copy of the KCSC file submitted by Respondent shows that
on June 28, 2011, the KCSC received a letter from Petitioner
dated June 26, 2011, almost a year after the petition had been
filed and about ten months after the petition had been denied.
In the letter, Petitioner informed the KCSC Clerk that there had
been no response to his habeas petition filed in late June 2010,
explained that Petitioner was facing time limitations for getting
the case into federal court, and asked for information on the
status of the proceeding.  (Resp.'s supp. brf., doc. 23-1, 11.)
In another letter dated July 25, 2011, and stamped received by

---

[5] Incoming mail from the KCSC is recorded for July 2, 2010, which apparently reflects the KCSC's executive officer's acknowledgment of the filing and assignment of the case number that was dated June 30, 2010. (Doc. 21, 7.)  Incoming mail from the KCSC was not logged until over a year later on August 9, 2011. (Doc. 23-2, 2.)

the KCSC on July 27, 2011, Petitioner informed the KCSC Clerk
that time restraints had been exceeded; Petitioner asked for a
response to the "habeas corpus." (Doc. 23-1, 10.)  Petitioner
again wrote to the KCSC executive officer in a letter dated
August 9, 2011, and stamped received by the KCSC on August 11,
2011, expressing concern about time limits, informing the court
that there were "TIME RESTRAINTS SET UP FOR (60) DAYS," and
asking for information on the status of the writ. (Doc. 23-1,
9.)  The mail log confirms these events. (Doc. 23-2, 3.)

The KCSC file shows that Petitioner's ex parte motion for
transcripts of portions of the trial record, dated and signed on
August 13, 2011, was stamped filed by the KCSC on August 18,
2011. (Doc. 23-1, 5-8.)  A KCSC minute order dated September 23,
2011, reflects that the case was submitted for a ruling on
September 26, 2011. (Id. at 4.)  An order entitled "ADDENDUM
ORDER FOR PETITION OF WRIT OF HABEAS CORPUS" dated September 29,
2011, indicated that the KCSC had read and considered additional
evidence received on August 18, 2011.  The KCSC stated in the
order that the petition was denied, and a copy of the minute
order had been sent to Petitioner on August 25, 2010.  The KCSC
stated that Petitioner was not entitled to a transcript simply to
comb through the record to find issues to raise on review; the
issue had been raised in the initial petition, and Petitioner had
not presented new evidence to warrant a change in the KCSC's
position.  The KCSC further concluded that Petitioner cited no
authority that would permit the KCSC to reconsider the petition
for writ of habeas corpus, although Petitioner could appeal;
thus, the petition for writ of habeas corpus "remains denied and

1  petitioner (sic) motion for transcripts is denied." (Id. at 3.)

2  A copy of the addendum order for the petition of writ of habeas

3  corpus was sent to Petitioner on October 3, 2011. (Doc. 23-1,

4  2.)

5          2.  Analysis

6      From Petitioner's allegations and the mail logs submitted to

7  the Court, it appears that Petitioner did not receive the KCSC's

8  denial of his petition that was mailed in late August 2010.

9      Respondent does not appear to contest Petitioner's

10  allegation that he did not receive a ruling until October 3,

11  2011.  However, Respondent contends that Petitioner is

12  nevertheless not entitled to equitable tolling because Petitioner

13  did not diligently proceed with his claims in the KCSC.

14      Petitioner delayed for a year before inquiring about the

15  status of his habeas corpus petition.  His inquiries reflect that

16  he was well aware of time limitations on the review process.

17  However, Petitioner has not established diligence with respect to

18  receiving notice because he has not justified his delay.  The

19  delay was lengthy.  It was well over the few months involved in

20  White v. Ollison, 530 F.Supp.2d 1077 (approximately two and one-

21  half months) and Lewis v. Mitchell, 173 F.Supp.2d 1057 (over five

22  months).  It was similar to the excessive delays recognized as

23  barring equitable tolling in cases in other cases.  See, e.g.,

24  White v. Martel, 601 F.3d 882, 884 (9th Cir. 2010), cert. den.,

25  131 S.Ct. 332 (2010) (per curiam) (an eleven-month delay in

26  filing a protective federal habeas petition after learning that a

27  state court had ruled that Petitioner's post-conviction habeas

28  petition was untimely was held too long to permit equitable

tolling); <u>Stroman v. Thaler</u>, 603 F.3d 299, 302 (5th Cir. 2010)
(inquiring about a state habeas petition ten months after it was
filed, learning that it was still pending, and then waiting
another eighteen months to inquire again was held not to support
equitable tolling when only five months of the federal
limitations period remained at the time the state petition was
filed); <u>Earl v. Fabian</u>, 556 F.3d 717, 722-23 (8th Cir. 2009)
(waiting ten months to file a petition after receipt of notice
that the conviction was final, where eight months of the
limitations period remained at the time notice was received, was
held not to warrant equitable tolling); <u>Drew v. Department of
Corrections</u>, 297 F.3d 1278, 1287-88 (11th Cir. 2002) (although a
petitioner failed for a year to receive a district court's order
dismissing a petition without prejudice and directing further
state proceedings, the petitioner's delay of almost sixteen
months in inquiring regarding the status of the petition
demonstrated a lack of diligence, resulted in an untimely filing,
and foreclosed equitable tolling); <u>and</u> <u>see</u>, <u>Rodriguez v.
Marshall</u>, 2009 WL 1424260 (No. 1:05-cv-0230 GSA HC, E.D.Cal. May
20, 2009) (unpublished) (petitioner's delaying for sixteen months
after a petition for review was filed to pursue his case, and his
failure to inquire of his counsel concerning the petition, was
held to show a lack of diligence that foreclosed equitable
tolling even assuming that counsel negligently failed to inform
the petitioner of the denial of the petition).

       The Court concludes that a reasonable person in Petitioner's
circumstances would have inquired much earlier concerning the
status of the petition.  At the time Petitioner made his first

inquiry, only about two weeks remained of the limitations period absent tolling. Further, Petitioner's access to the courts and ability to file a petition are demonstrated by the fact that Petitioner filed his first federal habeas petition (<u>Vaughn v. Allison</u>, case number 1:11-cv-01384-GSA) on August 17, 2011. Thus, it does not appear that the delay in receipt of notification from the KCSC prevented the filing of a timely federal petition.

The Court concludes that Petitioner has failed to show that he was diligent and that the delay in notification was the cause of the untimeliness. Thus, he is not entitled to equitable tolling of the statute of limitations for the period of time following the KCSC's denial of the petition on August 25, 2010, until Petitioner received notice on October 3, 2011.

Accordingly, the statute of limitations was tolled for forty-three days between July 14, 2010, the day that the limitations period began to run, until August 25, 2010, the day the KCSC denied the habeas petition. The statutory limitations period then ran out on August 26, 2011, long before Petitioner filed his next state petition in the California Supreme Court on April 28, 2012. Petitioner's federal petition filed here on July 20, 2012, was thus untimely.

C. <u>Submission of the Petition in August 2011</u>

Petitioner seeks equitable tolling based on his alleged submission of a petition to the CCA in August 2011. The petition is on a form approved for habeas petitions by the Judicial Council of California. The petition is captioned for the Court of Appeal of the State of California, Fifth Appellate District.

It is stamped both as received and as filed by this Court on August 19, 2011.  The date next to Petitioner's signature is "8-17-2011."  (Petr.'s objs., doc. 21, 17; <u>Vaughn v. Allison</u>, case number 1:11-cv-01384-GSA-HC, doc. 1, 6.)  Petitioner asserts that the petition was sent to the CCA on August 8, 2011, and that the CCA sent it to this Court when, in fact, Petitioner was only trying to exhaust his state court remedies by filing in the state courts.

The outgoing mail log for July and August 2011 shows outgoing mail to the KCSC on July 26, 2011, August 10, 2011, and August 17, 2011.  Outgoing mail to the CCA was dated August 17, 2011.  Outgoing mail to this Court was dated August 26, 2011.[6]

It is unlikely that a petition signed on August 17, 2011, and deposited for mailing at the prison in Corcoran no earlier than that date, could have been received by the CCA in Fresno, forwarded to this Court, and received by this Court on August 19, 2011.  There does not appear to have been any reason for the CCA to have received a petition captioned for it and then to have forwarded it to this Court.  There is no indication in the docket of the earlier petition that Petitioner filed here (<u>Vaughn v. Allison</u>, case number 1:11-cv-01384-GSA-HC) that Petitioner sought to withdraw his petition or otherwise direct a petition to the CCA during that period of time.  The Court concludes that Petitioner has not shown that the CCA misdirected a petition to this Court.

Further, Petitioner has not shown that any alleged

_____

[6] The mail log names the addressees and their city, state, and zip code, but does not set forth their addresses.  There is no envelope in this Court's file.

misdirection of the petition captioned for the CCA caused any delay in the filing of a petition here.  Petitioner acknowledges that he received notice that his KCSC petition was denied in October 2011.  This Court dismissed Petitioner's federal petition as a mixed petition containing both exhausted and unexhausted claims on February 13, 2012.  The petition for writ of habeas corpus that Petitioner subsequently filed in the CSC was dated April 28, 2012, by Petitioner, and it was stamped received and filed by the CSC on May 2, 2012.  Petitioner thus delayed at least seven months in his exhaustion of state court remedies after learning that his KCSC habeas petition had been denied. Petitioner has not shown that any extraordinary circumstances involving the first federal petition were the cause of his untimeliness or that the extraordinary circumstances made it impossible to file a petition on time.

The Court concludes that Petitioner has not shown that he is entitled to equitable tolling on the basis of events surrounding the filing of his first federal petition here.

In summary, the limitations period began to run on July 14, 2010.  It was statutorily tolled from that date until August 25, 2010, when the KCSC denied the petition that Petitioner had filed there in June 2010.  The statute was not tolled during the period of delayed notification of the KCSC's denial because Petitioner did not exercise diligence in monitoring his petition in the KCSC or in exhausting his state court remedies.  Events related to the filing of the first federal petition were likewise not shown to constitute extraordinary circumstances that resulted in an untimely filing.  Petitioner is not entitled to equitable

1  tolling.

2      XI.  <u>Miscarriage of Justice</u>

3      Petitioner argues that it would be a miscarriage of justice

4  to dismiss the petition as untimely.  (Doc. 21, 2.)  However,

5  Petitioner has not shown that he is innocent of the charges or

6  that there is even a probability that he was innocent of the

7  charges.  <u>Cf.</u>, <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).

8  Petitioner has not shown any basis for concluding that a

9  miscarriage of justice would warrant relief from the operation of

10  the statute of limitations.

11      XII.  <u>Certificate of Appealability</u>

12      Unless a circuit justice or judge issues a certificate of

13  appealability, an appeal may not be taken to the Court of Appeals

14  from the final order in a habeas proceeding in which the

15  detention complained of arises out of process issued by a state

16  court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537

17  U.S. 322, 336 (2003).  A certificate of appealability may issue

18  only if the applicant makes a substantial showing of the denial

19  of a constitutional right.  § 2253(c)(2).  Under this standard, a

20  petitioner must show that reasonable jurists could debate whether

21  the petition should have been resolved in a different manner or

22  that the issues presented were adequate to deserve encouragement

23  to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336

24  (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

25  certificate should issue if the Petitioner shows that jurists of

26  reason would find it debatable whether the petition states a

27  valid claim of the denial of a constitutional right or that

28  jurists of reason would find it debatable whether the district

1  court was correct in any procedural ruling.  Slack v. McDaniel,

2  529 U.S. 473, 483-84 (2000).

3      In determining this issue, a court conducts an overview of

4  the claims in the habeas petition, generally assesses their

5  merits, and determines whether the resolution was debatable among

6  jurists of reason or wrong.  Id.  It is necessary for an

7  applicant to show more than an absence of frivolity or the

8  existence of mere good faith; however, it is not necessary for an

9  applicant to show that the appeal will succeed.  Miller-El v.

10  Cockrell, 537 U.S. at 338.

11      A district court must issue or deny a certificate of

12  appealability when it enters a final order adverse to the

13  applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

14      Here, it does not appear that reasonable jurists could

15  debate whether the petition should have been resolved in a

16  different manner.  Petitioner has not made a substantial showing

17  of the denial of a constitutional right.

18      Therefore, it will be recommended that the Court decline to

19  issue a certificate of appealability.

20      XIII.  Recommendations

21      Accordingly, it is RECOMMENDED that:

22      1) Respondent's motion to dismiss the petition be GRANTED;

23  and

24      2) The petition for writ of habeas corpus be DISMISSED as

25  untimely; and

26      3) Judgment be ENTERED for Respondent; and

27      4) The Court DECLINE to issue a certificate of

28  appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **June 10, 2013**          **/s/ Barbara A. McAuliffe**
                                  UNITED STATES MAGISTRATE JUDGE