**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAY LEE VAUGHN,<br><br>          Petitioner,<br><br>     v.<br><br>RALPH M. DIAZ, Warden,<br><br>          Respondent. | Case No. 1:12-cv-01231-LJO-BAM-HC<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITIONER'S MOTION FOR RECONSIDERATION AND REQUEST FOR AN EVIDENTIARY HEARING (DOC. 34)<br><br>FINDINGS AND RECOMMENDATIONS TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>**OBJECTIONS DEADLINE:**<br>**THIRTY (30) DAYS** |

Petitioner is a state prisoner who proceeded pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304.  Pending before the Court is Petitioner's motion for reconsideration of the dismissal of his petition for untimeliness.

   I.   Background

        A.   History of the Present Proceeding

In Petitioner's motion, which was filed on August 14, 2013, Petitioner argues that he is entitled to equitable tolling of the statute of limitations because of his mental illness during the

1

pertinent period of time.  Petitioner's habeas petition was dismissed pursuant to Respondent's motion, which was considered after full briefing by the parties.  The Court had vacated previously filed findings and recommendations because after they were filed, Petitioner submitted objections raising new matter that caused the Court to solicit additional documentation and briefing from the parties regarding Petitioner's allegations and arguments for equitable tolling of the statute of limitations.  Thereafter the Magistrate Judge filed new findings and recommendations in June 2013.  Petitioner filed objections to the findings and recommendations.

On August 7, 2013, the Court adopted the Magistrate Judge's findings and recommendations, granted the Respondent's motion to dismiss the petition, and dismissed Petitioner's petition for writ of habeas corpus as untimely; judgment was entered and served on Petitioner on the same day.

On August 14, 2013, Petitioner constructively filed[1] the instant

---

[1] Petitioner signed and declared under penalty of perjury that he mailed his motion from his custodial institution on August 14, 2013.  (Doc. 34, 3.)  The motion was deemed filed on that date pursuant to the "mailbox rule," which was initially developed in case law and is reflected in Habeas Rule 3(d).  Pursuant to the mailbox rule, a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court." Houston v. Lack, 487 U.S. 266, 276 (1988); Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001).  Rule 3(d) requires an inmate to use the custodial institution's system designed for legal mail and provides for a showing of timely filing by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement setting forth the date of deposit and verifying prepayment of first-class postage.  The mailbox rule applies to federal and state petitions alike.  Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003), and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).  The mailbox rule, liberally applied, in effect assumes that absent evidence to the contrary, a legal document is filed on the date it was delivered to prison authorities, and a petition was delivered on the day it was signed.  Houston v. Lack, 487 U.S. at 275-76; Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010); Lewis v. Mitchell, 173 F.Supp.2d 1057, 1058 n.1 (C.D.Cal. 2001).  The date a petition is

2

1   motion for reconsideration of the dismissal in which he sought

2   relief from the judgment and purported to submit "final objections"

3   to the findings and recommendations.[2]

4        On August 29, 2013, Petitioner filed a notice of appeal from

5   the judgment of dismissal.

6        On September 11, 2013, Respondent filed opposition to

7   Petitioner's motion for reconsideration.  No reply was filed.

8        On November 27, 2013, the Court of Appeals for the Ninth

9   Circuit issued an order in the appeal in which it noted that because

10  the appeal was filed during the pendency of a timely-filed "Fed. R.

11  App. P. 4(a)(4) motion," the notice of appeal is ineffective until

12  entry of this Court's order disposing of the motion.  Further, the

13  proceedings in the Court of Appeals will be held in abeyance pending

14  this Court's resolution of the motion.  (Doc. 43.)

15       On April 1, 2013, this Court deferred consideration of

16  Petitioner's motion for reconsideration pending further submissions

17  and ordered the record expanded to include Petitioner's medical

18  records concerning his mental condition for the period of August 26,

19  2010, through July 20, 2012.  The medical records were submitted

20  along with additional argument by Respondent on May 15, 2014, and

21  Petitioner replied on May 15, 2014.

22            B.   Summary of Facts Pertinent to Equitable Tolling

23       Direct review of Petitioner's judgment concluded when the

24

25  signed may be inferred to be the earliest possible date an inmate could submit his
    petition to prison authorities for filing under the mailbox rule.  Jenkins v.
    Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds, Pace
26  v. DiGuglielmo, 544 U.S. 408 (2005).

27  [2] To the extent that Petitioner purports to submit objections to the findings and
    recommendations, the Court notes that objections would be untimely; thus, the
28  Court considers Petitioner's points in connection with the pending motion for
    reconsideration.

California Supreme Court (CSC) denied a petition for review on April 14, 2010.  The statute of limitations would otherwise have begun running ninety days later on July 14, 2010.  However, because Petitioner had already filed in June 2010 a habeas petition in the trial court (the Kern County Superior Court or KCSC), the pendency of the KCSC habeas petition statutorily tolled the running of the statute of limitations until August 25, 2010, when the KCSC denied the petition and sent notice of the denial to Petitioner.

The statute began to run again on August 26, 2010, and expired on August 25, 2011.  During that time interval, Petitioner filed a petition here, which was pending between August 17, 2011, and February 13, 2012, when it was denied without prejudice for being a mixed petition containing a claim as to which state court remedies had not been exhausted.[3]  Petitioner asserted that he had mailed the petition to the state intermediate appellate court, the CCA, and that the CCA had in turn erroneously forwarded it to this Court; he had never intended to file a petition in this Court at that time, but rather to exhaust his state court remedies by filing in the CCA. Further, he alleged that it was not until October 3, 2011, that he received notice of the KCSC's denial of his habeas petition that had been filed and mailed on August 25, 2010.  Petitioner sent inquiries seeking a decision on the petition to the KCSC on June 26, 2011;

---

[3] Reference to the docket in that case, Vaughn v. Allison, case number 1:11-cv-01384-GSA, shows that on May 3, 2012, after judgment of dismissal and the filing of a notice of appeal, Petitioner filed a notice that he had filed a habeas petition in the California Supreme Court to exhaust his mixed petition, and he requested that he be allowed to try to exhaust his mixed petition. (Doc. 24 at 1.)  Petitioner's appeal was terminated on February 11, 2013, when Petitioner's request for a certificate of appealability was denied by the Ninth Circuit Court of Appeals. (Doc. 25.)

4

July 25, 2011; and August 9, 2011.  Petitioner also filed a motion for a transcript in the KCSC on or about August 13, 2011, which was denied by the KCSC on September 29, 2011, in a decision stating that the petition remained denied, and the court had no authority to reconsider the petition.  Petitioner filed in the California Supreme Court (CSC) a second state habeas petition on April 28, 2012, after the limitations period had run.  The petition was resubmitted but was ultimately disregarded by the CSC in August 2012.

The petition in the instant case was dismissed because of the long delay between the KCSC's denial of August 25, 2010, and Petitioner's first inquiry seeking a decision that was directed to the KCSC on June 26, 2011.  Further, the Court concluded that Petitioner had delayed in the exhaustion of his state court remedies between October 2011, when he alleged that he had received notice that the KCSC had denied his petition, and April 28, 2012, when he filed a petition in the CSC.  Largely on the basis of these delays, Petitioner was found not to have been sufficiently diligent to warrant equitable tolling.  (Fdgs. & recs. to dismiss pet., doc. 28, 15-27.)

II.  <u>Motion for Reconsideration</u>

In the motion, Petitioner seeks this Court to reconsider the motion to dismiss, the Court's decision not to issue a certificate of appealability, and Petitioner's "last objection to findings and recommendations...."  (Mot., doc. 34, 1.)  Petitioner asks for this Court to conduct a <u>de novo</u> review of Petitioner's "mental files" in prison.  (<u>Id.</u>)

///

///

A.  <u>Summary of the Allegations regarding Petitioner's Mental Condition</u>

In the motion for reconsideration, Petitioner alleges that he is under psychiatric treatment for mental illness.  He alleges that he "has been on some type of [psychotropics] [his] entire incarceration."  (Mot., doc. 34, 1.)  Petitioner alleges the following in pertinent part:

> THE MEDICATIONS THAT PETITIONER HAS BEEN UNDER FOR MENTAL ILLNESS, THE DROWSYNESS (sic), THE PERIODS OF INABILITY TO THINK PROPERLY.  PETITIONER ASKS THIS COURT TO CONDUCT A <u>de</u> <u>NOVO</u> REVIEW OF MENTAL HEALTH FILES OF THE PETITIONER'S [PSYCHIATRIC] MEDICATIONS, THE SUICIDE WATCH, THE DEPRESSIVE BOUTS THAT RESTRICTS PETITIONER TO HIS BED OFTEN SINCE THE BEGINNING OF PETITIONER'S PRISON TERM AND, BUT NOT LIMITED TO THE BEGINNING OF THIS HABEAS CORPUS WRIT.  PETITIONER IS AN ACTIVE PARTICIPANT IN THE MENTAL [HEALTH] DELIVERY SYSTEM AT THE C.C.C.M.S. LEVEL OF CARE, HERE IN THE CALIFORNIA DEPARTMENT OF CORRECTIONS.

(Doc. 34, 2.)

> Petitioner further alleges:

> AT THE TIME OF PETITIONER'S ORIGINAL PETITION WAS FILE INTO THE K.C.S.C. UP UNTIL NOW, PETITIONER'S MENTAL ILLNESS AND MEDICATION HAS BEEN A SERIOUS FACTER (sic) IN MY TIMELY FILINGS TO THIS COURT.

(<u>Id.</u> at 1.)

Petitioner's last objections to the findings and recommendations were filed on July 15, 2013.  (Doc. 29.)  In pertinent part, Petitioner stated that he intended the first federal petition to be filed in the CCA, addressed it to the CCA, had no idea how it got here, but stated that it was erroneously sent to

6

this Court.  Petitioner did not control the mail, and he asserts generally that someone or something from the prison system or the CCA obstructed justice.  Petitioner states that when his first federal petition was dismissed, Petitioner filed on May 3, 2013, in the same action, a notice asking this Court to stay the proceedings to permit him to exhaust his petition in the CSC; thus, his federal action was timely filed.  (Id. at 1, 4-6.)

Further, in the objections, Petitioner refers to the "small and limited amount of prison legal law library and its staff," and states that he "went through desperate measures to obtain the actual time the K.C.S.C. had to send a habeas corpus review decision." (Id. at 6.)  He states that he sent several letters to the KCSC regarding the decision and did not know about a sixty-day limit in the KCSC.  (Id.)

B.  Summary of Facts Reflected in Petitioner's Medical Records

The records reflect that during the pertinent period, Petitioner suffered from a depressive disorder.  (Doc. 45-2 at 74, doc. 45-7 at 13.)  He was prescribed Remeron and Nortriptyline for depression.  (Doc. 45-9, 53; doc. 45-11 at 28, 36.)  He also took Dilantin for a seizure disorder as well as various medications for asthma and chronic pain, including some narcotic medications.  (Doc. 45-11 at 28, 36, 44, 46; doc. 45-9 at 53, 55; doc. 45-8 at 8, 27, 46-47, 65, 73.)

The records show that Petitioner was usually housed in the general prison population or was administratively segregated, and he participated as an outpatient in the Correctional Clinical Case Management System (CCCMS), a level of care described in the pertinent program overview as including inmates who are functioning in the general population, administrative segregation, or the security housing unit; exhibit symptom control, or have a partial remission of symptoms resulting from treatment; and have a global assessment of functioning (GAF) of 50 or above.[4]   Brief interventions for treatment were contemplated for the relatively stable inmates whose symptoms were largely controlled.   (Doc. 45-12, 2.)

In 2010 and 2011, assessments of Petitioner's depression resulted in recommendations that Petitioner remain in the CCCMS level of care.   (Doc. 45-7 at 8-10, 13.)   Petitioner reported a recent depressive episode and some anxiety or panic in February 2012, but he was assessed a GAF of 62 and kept at the CCCMS level of

---

[4] A GAF, or global assessment of functioning, is a report of a clinician's judgment of the individual's overall level of functioning that is used to plan treatment and to measure the impact of treatment as well as to predict its outcome.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed., text revision) (DSM-IV-TR).  A GAF of within the range of 51 through 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  Id. at 34.  A GAF of 65 (i.e., between 61 and 70) indicates a person with some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but who is generally functioning pretty well and with some meaningful interpersonal relationships.  DSM-TR at 34.

care.   (Doc. 45-4 at 11; doc. 45-3 at 72.)   With the exception of acute events described more fully below, Petitioner's recorded GAF scores ranged from 60 in January 2010 (doc. 45-6 at 4), 63 in March 2010 (doc. 45-9 at 49, doc. 45-7 at 14), 65 in February 2011 (doc. 45-9 at 46-48, 45-7 at 10), 62 in February 2012 (doc. 45-4 at 11), 62 in July 2012 (doc. 45-1 at 74), and 65 in September 2012 (doc. 45-1 at 54).

From late 2009 through late 2012, Petitioner generally denied that he suffered symptoms of depression or suicide or side-effects of medications; he was stable on medications, and he reported no distress or urgent or emergent health issues.   (Doc. 45-9 at 48-50, 55; doc. 45-8 at 34; doc. 45-7 at 7; doc. 45-6 at 10; doc. 45-5 at 30, 51, 55, 70-71; doc. 45-4 at 11, 22; doc. 45-3 at 49; doc. 45-2 at 49, 54.)   A mental health progress note dated April 26, 2011, stated that since the last assessment performed on February 2, 2010, Petitioner reported some (perhaps three) episodes of deep depression lasting one to two days each, but he had otherwise done well, had organized thoughts, and denied a pervasive, depressed mood.   (Doc. 45-5 at 42.)   In June 2012, Petitioner reported that he had a history of depressive symptoms beginning in 1996 or 1997; between 1996 and 2012, he had eight to ten instances of more severe symptoms and insomnia that lasted for several days to a week.   (Doc. 45-2 at 63.)

In December 2009, Petitioner was placed on suicide watch after

9

he had a fight with another inmate.  (Ex. B doc. 10-45.)  During

Petitioner's appeal of a disciplinary violation for the fighting,

Petitioner explained the incident by saying that when he was

approached with a staff complaint, it resulted in Petitioner's

having security concerns.  When staff did not remove Petitioner

promptly from the facility, Petitioner had himself admitted to the

Correctional Treatment Center.  (Doc. 10-45, 2.)

In January 2010, about a month after Petitioner's mother died,

Petitioner was given psychotropic medications and was placed in a

crisis bed in the treatment center after Petitioner reported

suicidal ideation and self-destructive intentions.  (Doc. 45-5, 74.)

He was discharged from the crisis unit on February 4, 2010; his GAF

on intake was 25 and on discharge was 60.  (Doc. 45-10 at 57.)  On

March 15, 2010, a suicide risk assessment noted Petitioner reported

that a placement on suicide watch on February 6, 2010, was because

he was not being fed in administrative segregation, whereas inmates

on suicide watch were fed really well.  (Doc. 45-9, 50.)

Entries made from January 2010 through July 2012, a time during

which Petitioner was generally diagnosed with a depressive disorder,

reflected that Petitioner's thought content was within normal

limits, and his thought process was goal-directed, linear, and

logical.  (Doc. 45-6 at 1, 2, 6, 10; doc. 45-5, 68; doc. 45-9, 48;

doc. 45-10, 64; doc. 45-4, 4; doc. 45-2 at 1, 74.)  His cognition,

fund of information, intellectual functioning, concentration,

attention, and memory were within normal limits in March 2010. (Doc. 45-7, 14.)

In August 2011, a physician's order included a note to reassign Petitioner to a job with no repetitive hand movements.  (Doc. 45-4 at 74.)  In February 2012, Petitioner was noted to have linear and goal-directed thoughts, and it was advised that a job for Petitioner be considered in order to elevate his mood. (Doc. 45-4 at 4.)

Petitioner asserts in the reply that the combination of all of his ailments, including his grand mal seizures which leave him exhausted, his hearing of voices, and the various drugs that he took at various times, including some narcotics for pain, caused him to be unable to file a timely petition.  Petitioner now urges that the combination of his previously raised mental condition, along with his physical condition as revealed in the medical records and the side-effects of his medication, all prevented him from filing timely.

Petitioner submits additional and updated records to support his characterizations of his condition, including  medication contracts that Petitioner contends reveal improper thinking and memory lapses, as well as medication records.  A contract for the use of narcotics for pain in October 2010 listed possible side-effects as nausea, lethargy, constipation, dizziness, falling, and death.  In the agreement, Petitioner promised to notify his health care providers (physicians, physicians' assistants, nurses, etc.) of

any discomfort or side-effects experienced so that his medication might be adjusted.  (Doc. 46 at 6, 15-16.)  In February 2011, he was diagnosed with a depressive disorder, not otherwise specified, rule out psychotic disorder because of past and current complaints, with a GAF of 65 and an assessment of only a mild impairment, fair to poor insight, depressed mood and appetite, but otherwise within normal limits.  (Id. at 20-21.)  Medications in November 2011 included Gabapentin, Levalbuterol, Mirtazapine, Phenytoin sodium, and Cetirizine HCL.  (Id. at 26-27.)  In July 2012, Petitioner refused for a few days to use an inhaler; his medications at that time included Albuterol sulfate nebulizer, Gabapentin, Levalbuterol tartrate inhaler, Loratadine, magnesium hydroxide/aluminum hydroxide/simethicone, and Mirtazapine.  (Id. at 14.)

Petitioner also submits records from the period before August 2010 and after July 2012: another form reflects that in February 2010, Petitioner was notified that his anti-depressant, Remeron, had possible side-effects of drowsiness, fainting, fatigue, weight gain, and increase in appetite.  (Id. at 8.)  In March 2010, Petitioner took Acetaminophen with codeine.  (Id. at 30.)  Petitioner continued to take Remeron in December 2012 (id. at 10), and he submits records from a much later period in 2014 showing modification of his medications and prescriptions for anti-psychotic medications due to increasing voices (id. at 12), and records from March 2010 showing that he complained of an increase in voices that sometimes told him

12

to "beware" (id. at 19).  Petitioner submits additional medication

lists from 2013 and 2014.  (Id. at 32-33.)

Petitioner's medical records show that he actively advocated

for his own interests and needs while in prison.  Petitioner

repeatedly requested medications and modifications of medications

and treatment that he received for various medical conditions he

suffered, including seizures, asthma, and joint conditions.  (See,

e.g., doc. 45-11 at 56-57, 60-61 [complaint regarding pain

medication in September 2010]; doc. 45-11 at 49-52 [request in

December 2010 for medical mattress, cane, wrist and back braces, and

orthopedic shoes, with wrist brace and cane approved]; doc. 45-11 at

28, 40-42 [request and reports in April through July 2011 of

increased seizure activity after discontinuation of Gabapentin];

doc. 45-11 at 29-33 [request concerning discontinuance of pain

medications in May 2011]; doc. 45-11 at 2-6 [complaint in July 2012

of failure to receive a timely examination by a physician and

treatment for back and leg conditions that caused inability to walk

and chronic pain].)

Petitioner also frequently employed the administrative appeal

process in prison regarding non-medical aspects of his custody.

(See, e.g., doc. 45-11 at 58-59 [request in May 2010 for priority

status relating to library use]; doc. 45-11 at 20, 22-24 [need for

Kosher diet in 2009 and 2011]; doc. 45-11 at 13-14 [request in July

2012 for transfer to another prison due to the presence of enemies

on his yard and a resulting fight]; doc. 45-10 at 2-4 [appeal of
disciplinary findings in 2009 and 2010 relating to a fight in
December 2009]; doc. 45-9 at 59 and 45-5 at 9 [four-day hunger
strike in January 2010 to obtain his missing property, hunger strike
in August 2011].

    C.  <u>Analysis</u>

    A motion for reconsideration is treated as a motion to alter or
amend judgment under Fed. R. Civ. P. 59(e) if it is filed within the
time limit set by Rule 59(e).  <u>United States v. Nutri-cology, Inc.</u>,
982 F.2d 394, 397 (9th Cir. 1992).  Otherwise, it is treated as a
motion pursuant to Fed. R. Civ. P. 60(b) for relief from a judgment
or order.  <u>American Ironworks & Erectors, Inc. v. North American
Const. Corp.</u>, 248 F.3d 892, 989-99 (9th Cir. 2001).  A motion to
alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e) "must be
filed no later than 28 days after the entry of the judgment."  Fed.
R. Civ. P. 59(e).

    1.  <u>Relief pursuant to Fed. R. Civ. P. 59(e)</u>

    Relief pursuant to Fed. R. Civ. P. 59(e) is appropriate when
there are highly unusual circumstances, the district court is
presented with newly discovered evidence, the district court
committed clear error, or a change in controlling law intervenes.
<u>School Dist. No. 1J, Multnomah County, Oregon v. AcandS, Inc.</u>, 5
F.3d 1255, 1262 (9th Cir. 1993).  To avoid being frivolous, such a
motion must provide a valid ground for reconsideration.  <u>See</u>, <u>MCIC
Indemnity Corp. v. Weisman</u>, 803 F.2d 500, 505 (9th Cir. 1986).

14

Petitioner appears to argue that he is entitled to equitable tolling because of his mental illness and treatment for mental illness.  The underlying evidence regarding Petitioner's mental illness and treatment consisted of matter within Petitioner's personal knowledge at the pertinent time, and thus it cannot be said to constitute newly discovered evidence.  No change in controlling law has intervened, and Petitioner does not make a showing of any clear error on the part of the Court in its ruling on the motion to dismiss.

However, in an abundance of caution with regard to the limitations placed on pro se petitioners who are suffering from mental illness, the Court will consider Petitioner's claim concerning his mental illness to raise unusual circumstances.

a.   <u>Equitable Tolling for Mental Illness</u>

The one-year limitation period of § 2244 is subject to equitable tolling where the petitioner shows that he or she has been diligent, and extraordinary circumstances have prevented the petitioner from filing a timely petition.  <u>Holland v. Florida</u>, – U.S. –, 130 S.Ct. 2549, 2560, 2562 (2010).  Petitioner bears the burden of showing the requisite extraordinary circumstances and diligence.  <u>Chaffer v. Prosper</u>, 592 F.3d 1046, 1048 (9th Cir. 2010).  A petitioner must provide specific facts regarding what was done to pursue the petitioner's claims to demonstrate that equitable tolling is warranted.  <u>Roy v. Lampert</u>, 465 F.3d 964, 973 (9th Cir. 2006).  Conclusional allegations are generally inadequate.  <u>Williams v. Dexter</u>, 649 F.Supp.2d 1055, 1061-62 (C.D.Cal. 2009).  The petitioner must show that the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it

15

impossible to file a petition on time.  <u>Ramirez v. Yates</u>, 571 F.3d 993, 997 (9th Cir. 2009).

Equitable tolling is permissible when a petitioner can show a mental impairment so severe that the petitioner was unable personally to understand either the need to file timely or to prepare a habeas petition, and that impairment made it impossible under the totality of the circumstances to meet the filing deadline despite petitioner's diligence.  <u>Bills v. Clark</u>, 628 F.3d 1092, 1093 (9th Cir. 2010).  The court in <u>Bills</u> focused its inquiry on the ability of petitioners to comply with what the law requires given their particular circumstances, stating the test as follows:

> With these cases in mind, we conclude that eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test:
>
> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, *see Holland*, 130 S.Ct. at 2562, by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance. *See id.*
>
> To reiterate: the "extraordinary circumstance" of mental impairment can cause an untimely habeas petition at different stages in the process of filing by preventing petitioner from understanding the need to file, effectuating a filing on his own, or finding and utilizing

1
2
3
4
5
6

> assistance to file. The "totality of the circumstances"
> inquiry in the second prong considers whether the
> petitioner's impairment was a but-for cause of any delay.
> Thus, a petitioner's mental impairment might justify
> equitable tolling if it interferes with the ability to
> understand the need for assistance, the ability to secure
> it, or the ability to cooperate with or monitor assistance
> the petitioner does secure. The petitioner therefore
> always remains accountable for diligence in pursuing his
> or her rights.

7
8

Bills v. Clark, 628 F.3d at 1099-1100.  The standard thus requires

9

evaluation of the petitioner's ability to understand the need to

10

file within the limitations period and to submit a minimally

11

adequate habeas petition as well as the petitioner's diligence in

12

seeking assistance with what he could not do alone; relief is

13

available if the mental impairment rendered timely filing impossible

14

or even where it would have technically been possible for a prisoner

15
16

to file a petition, but a prisoner would have likely been unable to

17

do so.  Id. at 1100 n.3.  The court set forth the following

18

analytical path for a district court to follow:

19
20
21
22
23
24
25
26

> In practice, then, to evaluate whether a petitioner is
> entitled to equitable tolling, the district court must:
> (1) find the petitioner has made a non-frivolous showing
> that he had a severe mental impairment during the filing
> period that would entitle him to an evidentiary hearing;
> (2) determine, after considering the record, whether the
> petitioner satisfied his burden that he was in fact
> mentally impaired; (3) determine whether the petitioner's
> mental impairment made it impossible to timely file on his
> own; and (4) consider whether the circumstances
> demonstrate the petitioner was otherwise diligent in
> attempting to comply with the filing requirements.

27

Bills v. Clark, 628 F.3d at 1100-1101.  With respect to the

28

necessary diligence, the petitioner must diligently seek assistance

and exploit whatever assistance is reasonably available.  Thus, this Court should examine whether the petitioner's mental impairment prevented him from locating assistance or communicating with or sufficiently supervising any assistance actually found.  Id. at 1101.

Here, the relevant time period for Petitioner's equitable tolling claim is from August 26, 2010, the date the statute began running, through July 20, 2012, the date Petitioner constructively filed the petition in the present case.  The expanded record contains over 730 pages of Petitioner's medical records, which cover medical treatment for conditions that were both physical and mental in nature in the years 2010 through 2012 and beyond.

Petitioner alleged that he had a mental illness, received treatment in the CCCMS, and was continually on some form of psychotropic medication.  However, these allegations do not establish a mental impairment that was sufficiently severe to render Petitioner unable either to understand rationally or factually the need to file timely, or to prepare a petition and effectuate its timely filing.  The medical records do not reflect a person with a severe mental impairment.  Petitioner's GAF scores reflect someone with some mild symptoms, such as depressed mood and mild insomnia, or some difficulty in social or occupational functioning, but who is generally functioning pretty well.  Petitioner's housing placement and his participation in the CCCMS level of care are also consistent with someone with mild difficulties who nevertheless functions generally well.

Although Petitioner asserts that he suffered various side-effects from his medications, his own reports to his treatment

providers during the period in question were generally to the
contrary.  Although the records did reflect some acute episodes of
depression with temporary limitations of function, they were few and
far between, with only three to six days during the period between
the middle of 2010 and the middle of 2011, and an episode in early
2012 at which time he was still only mildly impaired and was kept at
the CCCMS level of care.  Petitioner has not correlated these short
periods of more acute symptoms with any particular difficulty in
preparing a petition or obtaining assistance in doing so.

Although Petitioner referred to suicide watch in the petition,
the only instances of suicidal concerns were in 2009 and very early
2010, before the pertinent time period.  Further, according to
Petitioner's own characterizations of these events, they were the
product of Petitioner's own fully conscious and calculated behavior
designed either to avoid what he perceived as risks to his physical
safety or to obtain preferable food.  These reactions appear to be
motivated as much by a keen sense of self-interest and a desire to
manipulate circumstances as they are impelled by a severe mental
impairment.

Petitioner asserts that his medical impairment and treatment
have been serious factors in his untimely filings.  However, the
records contradict Petitioner's generalized assertion because they
reflect normal thought content and process.  They also demonstrate
clearly that Petitioner was able to make numerous requests and
complaints through the processes available in prison.  Further,
Petitioner was able to file a previous timely federal petition in
Vaughn v. Allison, case number 1:11-cv-01384-GSA; an appeal; and
state habeas petitions, motions, and inquiries regarding those

proceedings.   These filings strongly undercut Petitioner's claim that he suffered from a severe mental impairment that prevented a timely filing in the instant case.   Cf. Yeh v. Martel, 751 F.3d 1075, 1078 (9th Cir. 2014) (concluding that evidence that the petitioner repeatedly sought administrative and judicial remedies showed an awareness of basic legal concepts, and that the ability to request assistance and to file a state habeas petition in three different courts refuted a claim of impairment so debilitating that one could not rationally or factually understand the meaning of a deadline); Roberts v. Marshall, 627 F.3d 768, 772-73 (9th Cir. 2010) (considering the petitioner's having managed to file several state post-conviction collateral petitions within the relevant time frame as a factor militating against equitable tolling).

Considering the totality of the circumstances pertinent to Petitioner's ability to file a timely petition, Petitioner has not shown that he suffered from a mental impairment so severe as to cause his untimely filing.   Petitioner's reference to limited law library access is general.   The record contradicts Petitioner's general allegations of drowsiness, inability to think properly, and depressive bouts that frequently restricted Petitioner to his bed. Although it is conceivable that Petitioner's medications and ailments all combined to result in severe side-effects or limitations, the records of Petitioner's condition during the pertinent period fail to reflect either subjective complaints by Petitioner, or more objective evaluations and assessments by Petitioner's medical health care providers, that are consistent with a sufficiently severe mental impairment.   Further, the record reflects a lengthy history of inconsistent functioning on

20

Petitioner's part that included Petitioner's affirmative advocacy of his interests and positions, including numerous court filings, that contradict Petitioner's assertions as to the nature and extent of his impairment.  In short, the record effectively forecloses Petitioner's assertions concerning his condition.  Further, considering the entire record, Petitioner does not explain how his condition actually caused him not to be able to file a petition despite the exercise of diligence.

Accordingly, the Court concludes that after having reviewed an expanded record that included Petitioner's medical records during the pertinent period, Petitioner has not made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing.  The present case thus differs from Laws v. Lamarque, 351 F.3d 919, 922-24 (9th Cir. 2003).  The record forecloses a finding of good faith allegations that might entitle Petitioner to equitable tolling.  In light of the record before the Court, it is unnecessary to have an evidentiary hearing.  Cf. Roberts v. Marshall, 627 F.3d at 772-73.

The records do not reflect that any mental impairment made it impossible for Petitioner to file a petition on his own in a timely manner, either by preventing him from personally understanding rationally or factually the need to file timely, or by rendering him unable, with or without help, to prepare and effectuate the timely filing of a petition.

Accordingly, the Court concludes that Petitioner has not shown that there are highly unusual circumstances that would warrant relief pursuant to Fed. R. Civ. P. 59(e).

///

1          2.  <u>Relief pursuant to Rule 60(b)</u>

2      Federal Rule of Civil Procedure 60(b) governs the

3  reconsideration of final orders of the district court.  The rule

4  permits a district court to relieve a party from a final order or

5  judgment on grounds including but not limited to 1) mistake,

6  inadvertence, surprise, or excusable neglect; 2) newly discovered

7  evidence; 3) fraud, misrepresentation, or misconduct by an opposing

8  party; or 4) any other reason justifying relief from the operation

9  of the judgment.  Fed. R. Civ. P. 60(b).  The motion for

10  reconsideration must be made within a reasonable time, and in some

11  instances, within one year after entry of the order.  Fed. R. Civ.

12  P. 60(c).

13      Rule 60(b) generally applies to habeas corpus proceedings.

14  <u>See, Gonzalez v. Crosby</u>, 545 U.S. 524, 530-36 (2005).  Although the

15  Court has discretion to reconsider and vacate a prior order, <u>Barber</u>

16  <u>v. Hawaii</u>, 42 F.3d 1185, 1198 (9th Cir. 1994), motions for

17  reconsideration are disfavored.  A party seeking reconsideration

18  must show more than a disagreement with the Court's decision and

19  offer more than a restatement of the cases and arguments considered

20  by the Court before rendering the original decision.  <u>United States</u>

21  <u>v. Westlands Water Dist.</u>, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001).

22  Motions to reconsider pursuant to Rule 60(b)(1) are committed to the

23  discretion of the trial court, <u>Rodgers v. Watt</u>, 722 F.2d 456, 460

24  (9th Cir. 1983), which can reconsider interlocutory orders and re-

25  determine applications because of an intervening change in

26  controlling law, the availability of new evidence or an expanded

27  factual record, or the need to correct a clear error or prevent

28  manifest injustice, <u>Kern-Tulare Water Dist. v. City of  Bakersfield</u>,

22

634 F.Supp. 656, 665 (E.D.Cal. 1986), aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987).

Local Rule 230(j) provides that whenever any motion has been granted or denied in whole or in part, and a subsequent motion for reconsideration is made upon the same or any alleged different set of facts, counsel shall present to the Judge or Magistrate Judge to whom such subsequent motion is made an affidavit or brief, as appropriate, setting forth the material facts and circumstances surrounding each motion for which reconsideration is sought, including information concerning the previous judge and decision, what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, what other grounds exist for the motion, and why the facts or circumstances were not shown at the time of the prior motion.

Here, Petitioner has not shown any law or facts that reflect that the Court's decision on the motion to dismiss constituted an abuse of discretion, clear error, or a manifest injustice. He has not shown any other reason justifying relief from the operation of the judgment.

Accordingly, it will be recommended that Petitioner's motion for reconsideration be denied.

III.  Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  A district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it is possible that reasonable jurists could debate whether the petition should have been resolved in a different manner.

Accordingly, it will be recommended that Court issue a certificate of appealability.

IV.  Recommendations

Accordingly, it is RECOMMENDED that:

24

1      1) Petitioner's request for an evidentiary hearing be DENIED;

2  and

3      2) Petitioner's motion for reconsideration be DENIED; and

4      3) The Court ISSUE a certificate of appealablity.

5      These findings and recommendations are submitted to the United

6  States District Court Judge assigned to the case, pursuant to the

7  provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

8  Rules of Practice for the United States District Court, Eastern

9  District of California.  Within thirty (30) days after being served

10  with a copy, any party may file written objections with the Court

11  and serve a copy on all parties.  Such a document should be

12  captioned "Objections to Magistrate Judge's Findings and

13  Recommendations."  Replies to the objections shall be served and

14  filed within fourteen (14) days (plus three (3) days if served by

15  mail) after service of the objections.  The Court will then review

16  the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

17  The parties are advised that failure to file objections within the

18  specified time may waive the right to appeal the District Court's

19  order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

20  IT IS SO ORDERED.

21    Dated:   **September 30, 2014**          /s/ _Barbara A. McAuliffe_

22                                         UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28